GREGORY, GALLOWAY & CO. v. J. J. HERRING.

In an action brought against A to recover the value of a horse sold by the plaintiff to B, the son of A, it was in evidence that the plaintiff had sold the horse to B, who lived upon and cultivated a portion of the defendant's land, and that on one occasion defendant was seen riding with B in a buggy drawn by the horse sold by the plaintiff to B. There was no evidence as to B being under full age, nor connecting A with the transaction. Upon a demurrer to the evidence: *It was held*, that plaintiff was not entitled to recover.

CIVIL ACTION, originally commenced in a Magistrate's Court and carried upon appeal to the Superior Court of LENOIR county, where it was tried before *Seymour*, *J.*, and a jury, at Spring Term, 1875.

The action was brought by the plaintiffs to recover one hundred and thirty dollars, a balance due on the price of a horse sold by them to one Joshua Herring, a son of the defendant.

A. J. Galloway, one of the plaintiffs, testified: I sold a horse, the property of the plaintiffs, to Joshua Herring in the fall of 1873. He wanted time to pay for the horse. Joshua is a son of the defendant. The price of the horse was $135. Joshua paid $5 on the day of the sale. I did not know he was under twenty one years of age. I did not know he was acting as his father's agent. I charged the price of the horse to Joshua. He was to pay in cotton in two weeks. In about two weeks he brought cotton to town, but sold it to other parties, and did not pay for the horse.

Council S. Wooten, a witness for the plaintiffs, testified: I live near the defendant. Joshua was living with the defendant and has carried on a farm on his father's land. I went out with Joshua at his request to look at his crop. He had nothing separate from his father. He worked the same land. I saw Joshua driving the horse. He called a part of the crop his; that was on his father's land.

J. H. Jolly, a witness for the plaintiffs, testsfied, that defendant had said on two or three occasions that the beast was a likely beast and well worth the money; his son Joshua had promised to pay for it, and if it had lived it would have been paid for. Defendant said Joshua had bought the beast. At the time of the conversation Joshua was not doing much for his father.

John Parker testified, that Joshua employed him on defendant's plantation in the spring of 1873, to ditch, and the old man, the defendant, gave directions as to how the ditch should be cut.

J. H. Hardy testified: He sold timber in the fall of 1873 to Joshua. After the purchase the defendant came with Joshua for the timber, and said Joshua had made a good bargain. Joshua said he was buying the timber for tenant houses. Defendant's team hauled the timber.

J. S. Wooten testified: I saw the defendant and his son Joshua driving the horse in controversy in a buggy at La Grange, not long after the sale of the horse by the plaintiffs. Joshua has lived with his father all the while. I saw Joshua sell corn at La Grange in the winter of 1874. Joshua worked on defendant's plantation for some years past, until 1875. I have heard Joshua making contracts with hands to work on the defendant's plantation. I think 1 saw Joshua selling seed cotton in the winter of 1873.

The defendant demurred to the evidence and insisted that there was no evidence of a previous authorization or a subsequent ratification of the purchase by Joshua as the agent of defendant.

His Honor instructed the jury that it was for them to say from the evidence whether or not the defendant authorized or ratified the sale.

The jury rendered a verdict in favor of the plaintiffs, and his Honor gave judgment accordingly. From this judgment the defendant appealed.

*Smith & Strong*, for the appellant.
No counsel in this Court *contra*.

SETTLE, J.   This action was brought to recover the price of a horse sold by the plaintiffs to a son of the defendant.   The plaintiffs introduced several witnesses who testified to the many facts set forth in the record, and the defendant demurred to the evidence.

We are, therefore, called upon to decide whether or not there was any evidence which tended to prove that the defendant authorized his son to purchase the horse, or that he afterwards ratified the same.

Several witnesses proved that the son lived with the father, but no one testified positively that the son was under twenty-one years of age.   The only allusion to his age is made by Galloway, one of the plaintiffs, who says he did not know that the son was under twenty-one years of age and did not know that he was acting as his father's agent; that he charged the price of the horse to the son, who was to pay it in cotton in two weeks.   For aught that appears upon the record, the son was of full age.   But assuming that he was not; there is nothing in the evidence which connects the defendant with the transaction in the remotest degree, either before or after the sale of the horse to the son.

We will not repeat the evidence, as it will be set forth in full by the reporter.   The strongest circumstance proven against the defendant was that he was seen, on one occasion, riding with his son while driving the horse, but surely that cannot be construed into a ratification of the purchase.

If fathers are to be held responsible for the acts of their sons who pass for adults, on such evidence as is here presented, they will have but little protection against the whims of young America and the chicanery of old speculators.  " Whether there be any evidence is for the Judge; whether sufficient evidence is for the jury."

We are of opinion that there was no evidence in this case,

not even a scintilla, which tended to establish the responsibility of the defendant. The authorities on this subject have been recently collected and discussed in the opinion of this Court, and the dissenting opinion of Justice BYNUM in the case of *Witkowsky & Rintels* v. *Wasson*, 71 N. C. Rep., 459. A further discussion of it is unnecessary.

Let the judgment of the Superior Court be reversed and judgment entered here for the defendant.

PER CURIAM.                              Judgment reversed.